UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:05CV-31-H

CHRIS RAY
and
MARK RAY                                                    PLAINTIFFS

V.

VIACOM OUTDOOR, INC.                                        DEFENDANT

**MEMORANDUM OPINION**

The controversy in this case arises out of a 1995 outdoor billboard lease with respect to property now owned by Chris and Mark Ray ("Plaintiffs" or "Lessors") located at 6795 North Dixie Highway in Elizabethtown, Kentucky (the "Lease"). The Lease was originally entered into between the Rays' predecessor in title and Viacom Outdoor, Inc. ("Viacom" or "Lessee"). Lessors contend that they have canceled the Lease effective January 4, 2004. Lessee contends that Lessors do not have the right to cancel the Lease under the current circumstances. Both sides have moved for summary judgment on their claims for declaratory judgment. Defendant has moved to dismiss Plaintiffs' remaining claims.

I.

On January 20, 1995, Joy and Stephen Weekes entered into a lease agreement with Outdoor Systems Advertising, Inc., which is now Viacom Outdoor, Inc. The pertinent provisions of the Lease state as follows:

> 1. Premises. The Lessor, as owner or agent of the owner, of the following premises: Street Address: 144 w/o Old 31 W Radcliff, KY. 6795 W DIXIE HW E-TOWN ... in the County/Parish of

Hardin, State of Kentucky, does hereby lease and grant exclusively to the Lessee, that portion of the premises necessary to construct (1) outdoor structure(s) with sufficient access to allow Lessee to service and maintain such structure(s).

2.  <u>Term</u>.  This Lease shall be for a term of (5) years beginning on completion of construction or August 22, 1995, whichever is earlier and shall automatically renew from year to year, thereafter with the understanding that the total renewal periods shall not exceed ten years.

3.  <u>Rental</u>.  Yearly rental shall be Eight Hundred Dollars & No Cents ($800.00) payable yearly from the office of Lessee. ***

4.  <u>Property</u>.  As between Lessor and Lessee all structures, equipment and materials placed on the premises shall remain the property of Lessee and Lessee is granted the right to remove same from Lessor's premises within a reasonable period of time after the expiration of this Lease or any renewal thereof.

***

7.  <u>Cancellation of Lease</u>. *** Lessor – Lessor shall have the right to terminate the lease at any time during the term hereof if the Lessor is to improve the premises by permanent construction or remodeling requiring the removal of Lessee's sign structures. *** Lessor agrees to cooperate with Lessee to allow removal of the structure to another part of the premises, upon the same terms and conditions of the original lease herein.

8.  <u>Lessor's Representations</u>. ...  Lessor represents and warrants that Lessor is either the owner or the agent of the owner of the premises above described, [and] has full authority to make this lease ... .  In the event of any transfer of Lessor's interest in the above described premises, Lessor agrees to promptly give Lessee notice of such transfer and to deliver to Lessor's transferee written notice of the existence of this lease and a copy thereof.

9.  <u>Entire Agreement</u>. ... [N]either the Lessor nor the Lessee is bound by any stipulations, representations or agreements not printed or written in this lease.  This lease shall inure to the benefit of and be binding upon the ... successor and assigns of the parties hereto, ...

2

The Lease continued under its present terms for over eight years.  On July 23, 2003, the Weekes conveyed their interest in the property to Plaintiffs.  Plaintiffs took possession of the property shortly thereafter and on or about January 20, 2004, notified Defendant of their intention to cancel the Lease.  Defendant refused to discuss the Lease and stated that Lessors had no right to cancel the Lease under the present circumstances.  After Plaintiffs notified Defendant of their intention to cancel the Lease, the parties exchanged numerous letters, each of which appear to exaggerate the reasonable legal positions available to both sides.  Because the Court finds that the Lease itself is clear and unambiguous, these negotiating and threatening letters play almost no part in the Court's actual construction of the Lease.

## II.

In the absence of an ambiguity, Kentucky courts will enforce a written instrument strictly according to its terms and will assign those terms their ordinary meaning.  *Frear v. P.T.A. Industries, Inc.*, 103 S.W.3d 99, 106 (Ky. 2003).   The construction and interpretation of a written contract are questions of law for the Court to decide.  *Cinelli v. Ward*, 997 S.W.2d 474, 476 (Ky. 1998).  In this case, both parties agree that the original written Lease governs their entitlement to cancel Defendant's leasehold interest, even though it was originally entered into by the Weekes and Outdoor Systems Advertising, Inc.  The only question is whether the original written Lease grants Plaintiffs the right to cancel Defendant's leasehold interest in these circumstances.

Here, the language clearly states that the Lease "shall automatically renew" rather than merely being "renewable."  The plain meaning of these words is that no action to renew the Lease each year is required.  At conference, Defendant agreed that it cannot cancel the Lease on

3

the anniversary date except for the reasons stated in the cancellation provisions for the Lease. Existence of such provisions confirms that the parties considered and recited the agreed upon cancellation terms. The cancellation provisions contain the only grounds for terminating the Lease. The original parties to the Lease having considered these provisions, there is no need for the Court to rewrite the Lease to expand or alter the existing cancellation options.

The Court must ask whether any other reasons suggest that the Lease should not be enforced according to its plain language. The fifteen year term is lengthy, but Lessors did not suggest that such a term was unconscionable. The Lease does not provide that either side may cancel at its option. The absence of such a provision is not unconscionable because it is consistent with the economic realties of such a Lease. Grounds for Lessee's cancellation are somewhat broader than those accorded Lessor. However, those stated grounds are each reasonably related to the economic purposes of the Lease and, therefore, be considered unconscionable.

Considering the plain and unambiguous language of the Lease, the Court makes the following interpretations:

1.      Commencing January 20, 1995, the Lease includes a five (5) year term followed by ten (10) one year terms each of which automatically renews from year to year.

2.      The Lease contains a cancellation provision setting forth the sole reasons and terms upon which either side may cancel the Lease.

3.      Because the Lease automatically renews each year, neither side needs to renew it and failure to renew does not cancel the Lease. Neither side has an independent right to cancel the Lease at the completion of any one year term.

4

Based on this interpretation Viacom retains a valid lease on the property located at 6795 North Dixie Highway in Elizabethtown, Kentucky. The Lessors have not canceled in accordance with the lease terms. Therefore, Defendant is entitled to a declaratory judgment on its counterclaim as to the validity of the Lease. Defendant has no claim for damages at this time.

III.

Defendant has moved to dismiss Plaintiffs' claims for malicious prosecution and abuse of process. As a basis for these claims, Plaintiffs allege that Defendant threatened to file its claim for breach of contract in order to coerce Plaintiffs into extending the lease. Plaintiffs point to a letter that Defendant sent them on April 24, 2004 as the evidentiary basis for their allegations. In that letter, Defendant submitted proposed settlement terms, offering to renew the lease for a longer period of time at an agreed upon increased rent amount. The letter further stated that "should your clients not desire to settle this case at this time, that along with our Answer, Viacom will be filing a Counterclaim seeking damages for your clients' breach of the Lease." This evidence is insufficient to entitle Plaintiffs to relief under either of their claims.

Abuse of process is the "irregular or wrongful employment of a judicial proceeding." *Stoll Oil Refining Co. v. Pierce*, 337 S.W.2d 263, 266 (Ky. 1960). The elements of an abuse of process claim are "(1) an ulterior purpose and (2) a willful act in the use of the process not proper in the regular conduct of the proceeding." *Simpson v. Laytart*, 962 S.W.2d 392, 394 (Ky. 1998). Plaintiffs cannot establish that the allegations against them were born of an ulterior motive. The evidence demonstrates that Defendant filed its action for breach of contract in order to prevent the cancellation of a lease that it believed to be executory. This is precisely what the

5

law allows him to do.[1]

Moreover, there is no evidence of any willful act in the use of the process not proper in the regular course of the proceeding.[2]  When Defendant threatened to file suit, the parties were involved in settlement negotiations after Plaintiff filed an action disputing the enforceability of the very lease at issue in Defendant's counterclaims.  Defendant sought settlement terms favorable to its interests; it did not seek any "collateral advantage" which could form the basis of an abuse of process claim.  *Simpson*, 962 S.W.2d at 395.  For Defendant to respond with a counterclaim in these circumstances is nothing more than a legal "tit-for-tat."  Therefore, Plaintiffs cannot make a *prima facie* case of abuse of process.

Plaintiffs have no viable claim for malicious prosecution either.  In order to make a *prima facie* case for malicious prosecution, Plaintiffs must prove, *inter alia*, that Defendant initiated a judicial proceeding that was terminated in Plaintiffs' favor.  *See, e.g.*, *Raine v. Drasin*, 621 S.W.2d 895, 899 (Ky. 1981).  Here, there is no doubt that Defendant initiated a judicial proceeding when it filed counterclaims for a declaration of rights and damages.  However, Plaintiff cannot prove that the proceeding terminated in his favor.  In fact, it has not terminated at all.  Accordingly, no reasonable jury could find Defendant liable for malicious prosecution and summary judgment is therefore appropriate.

---

[1]  Where there is an unequivocal repudiation of an executory contract, Kentucky law recognizes a claim for anticipatory repudiation.  *Jordon v. Nickell*, 253 S.W.2d 237, 239 (Ky. 1952)."[A]n unequivocal repudiation or renunciation of an executory contract in advance of the time of performance may, at the election of the injured party, be regarded as an anticipatory breach and support an immediate action for damages without waiting for the time of performance."

[2]  Such conduct "usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property on the payment of money, by the use of the process as a threat or a club."  *Simpson*, 962 S.W.2d at 395 (citation omitted).

The Court will enter an order consistent with this Memorandum Opinion.

cc:     Counsel of Record